|  | UNITED STATES DISTRICT COURT<br>DISTRICT OF PUERTO RICO |  |
|---|---|---|
| JOSÉ MUSTELIER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EQUIFAX, Inc.,<br><br>    Defendant. | | Civil No. 08-1008 (JAF) |

**OPINION AND ORDER**

Plaintiffs José Mustelier ("José"), Roxana Mustelier ("Roxana"), and their conjugal partnership bring this action against Defendant Equifax, Inc., alleging wrongful termination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, as well as Puerto Rico Law No. 100, of June 30, 1959, 29 L.P.R.A. § 146 (2001) ("Law 100"), and Law No. 80, of May 30, 1976, 29 L.P.R.A. § 185a (2006) ("Law 80"), and seeking spousal damages under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 (1990) ("Article 1802"). Docket No. 1.

Plaintiffs move for partial summary judgment, Docket No. 33, and Defendant opposes, Docket No. 42. Defendant moves for summary judgment, Docket No. 36, Plaintiffs oppose, Docket No. 45, and Defendant replies, Docket No. 55. Plaintiffs also move for reconsideration of our order dismissing spousal claims, Docket No. 40, Defendant opposes, Docket No. 47, and Plaintiffs reply, Docket No. 54.

**I.**

**Factual and Procedural Synopsis**

Unless otherwise indicated, we derive the following factual summary from the parties' motions, statements of material facts, and exhibits, Docket Nos. 33, 34, 35, 36, 40, 42, 43, 45, 46, 47, 54, 55, 56.

José and Roxana are married and both are citizens of Puerto Rico. José was born on October 10, 1940, and was sixty-six years old when he was fired by Defendant. Defendant is a Georgia corporation that has been doing business in Puerto Rico since 1988. It provides consumer and business credit intelligence, portfolio management, fraud detection, and marketing tools.

José was the president of the General Credit Bureau of Puerto Rico ("GCB") from 1984 until 1988, when Defendant acquired the operations of GCB. At that point, José continued to perform the same duties, but was given the title of Regional Vice President. José and Defendant entered into an employment contract on August 15, 1988. Docket No. 33-4. The employment contract stated that "[t]he term of employment . . . shall commence on [August 15, 1988] and continue into the future three years unless such employment is terminated prior to the expiration of such period . . . . The Agreement is automatically renewed each year on its anniversary to include the following three years." Id. The contract further stated that the parties could terminate the relationship by mutual agreement, and

Civil No. 08-1008 (JAF)                                                    -3-

> [Defendant] shall have the right to terminate the employment relationship hereunder, for good cause, by serving written notice upon [José]. For purposes hereof, good cause for termination by the employer shall only exist upon one or more of the following occurrences:
> 1. theft or the commission by [José] of any other crime involving moral turpitude;
> 2. the gross negligence of [José] in the performance of his duties hereunder;
> 3. the unreasonable refusal by [José] to perform his duties hereunder;
> 4. The failure by [José] to perform in any material respect his duties hereunder and such failure has a material and adverse effect on the operations of [Defendant].

Id. José remained in that position until December 14, 2006, when he was fired. During his tenure, José never received any discipline, and he received an overall rating of "meets expectations" or "exceeds expectations" in his performance evaluations for the years 2001 through 2005. Docket Nos. 33-8 to 33-14. As Regional Vice President, José was responsible for, inter alia, designing and executing a sales plan to achieve revenue targets in Puerto Rico; supervising and managing sales representatives, service representatives, and office personnel; implementing Defendant's human resources policies; and maintaining consumer relationships with Defendant's clients.

The parties dispute the issue of who was José's immediate supervisor. Defendant states that Brenda St. Pe' Bruno, the Regional Vice President for the South East Region, was José's direct supervisor, while Plaintiffs maintain that both José and St. Pe' Bruno reported to Andrew Nathan, Senior Vice President of Sales. St.

Pe' Bruno was born on June 22, 1957, and was forty-nine at the time that José was fired.

In early 2006, Defendant retained an outside consulting firm, Bain & Co., to conduct an analysis of its sales structure and assist in developing a new sales strategy. Bain & Co. developed the "Growth Playbook" strategy. The Growth Playbook strategy was designed to "flatten" the organization of Equifax and increase the "spans of control" and decision-making authority of sales managers. A span of control is a manager and the number of people whom they manage. In August 2006, Defendant announced the Growth Playbook strategy to its employees. In late August and early September 2006, Defendant began a reorganization process to implement the Growth Playbook strategy.

The record is unclear as to exactly how the decision to terminate José was made. At one point, Defendant states that Nathan did the analysis with respect to José's termination in September 2006 and informed St. Pe' Bruno of the decision to eliminate José's position in late October or early November of 2006. Docket No. 35-1 At another point, Defendant states that Nathan made the ultimate decision in mid-November 2006. Docket No. 46-8. Nathan testified that he did not consult with St. Pe' Bruno regarding which positions would be eliminated. Docket No. 35-7. However, St. Pe' Bruno testified that she was consulted and, in fact, that she was asked to determine which positions were redundant, at some point in November 2006. Docket No. 46-4.

On December 14, 2006, St. Pe' Bruno informed José that his position had been eliminated and that he was no longer employed by Defendant. Defendant later stated that the reason for José's termination was the reorganization, but that it also had concerns about his performance prior to the termination. Defendant also stated that after the termination, further performance concerns came to light, which, if known prior to the reorganization, would have resulted in his being fired.

A total of eight employees in the Regional Sales unit lost their jobs. Of the eight, seven were over forty. Prior to the reorganization, eighty-nine out of 124 of the regional sales employees were over forty. After the termination, Plaintiff's job duties were assumed by St. Pe' Bruno, Marilyn Newell, who was fifty-three at the time, and Richard Stinnett, who was forty-three at the time.

On March 6, 2007, José filed a charge of employment discrimination on the basis of age with the Equal Employment Opportunity Commission ("EEOC"). On January 3, 2008, Plaintiffs filed the present action in federal district court, alleging breach of contract and age discrimination under the ADEA and Puerto Rico law, and seeking compensation for damages suffered by both José and Roxana. Docket No. 1. On January 23, 2009, we dismissed Roxana's claims as time-barred. Docket No. 32. Plaintiffs moved for partial summary judgment on January 28, 2009. Docket No. 33. Defendant

opposed on February 11, 2009. Docket No. 42. Defendant moved for summary judgment on January 28, 2009. Docket No. 36. Plaintiffs opposed on February 23, 2008, Docket No. 45, and Defendant replied on March 11, 2009, Docket No. 55. On February 6, 2009, Plaintiffs moved for reconsideration of our dismissal of Roxana's claims. Docket No. 40. Defendant opposed on February 23, 2009, Docket No. 47, and Plaintiffs replied on March 9, 2009, Docket No. 54.

## II.

### Summary Judgment Standard under Rule 56(c)

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate

burden of persuasion, which always remains on the moving party. Id. at 331.

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III.

### Analysis

We address (1) Defendant's motion to dismiss José's ADEA and Law 100 claims; (2) the parties' cross motions for summary judgment with respect to José's Commonwealth breach of contract and wrongful termination claims; and (3) Plaintiffs' motion for reconsideration of our order dismissing Roxana's spousal claim.

**A.   ADEA and Law No. 100**

Plaintiff asserts both disparate treatment and disparate impact claims under the ADEA, and a claim under Law 100, Puerto Rico's age discrimination statute. Docket Nos. 1, 45. Defendant argues that we must grant summary judgment on José's ADEA claim because Plaintiffs have failed to demonstrate that Defendant's neutral explanation for firing José was a pretext for age discrimination. Docket No. 36. Defendant further argues that we must dismiss the Law 100 claims for the same reasons as the ADEA claims. Id.

The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiffs may allege violations of the ADEA under either a disparate treatment or a disparate impact theory.

### 1.   **Disparate Treatment**

In evaluating an employment discrimination case alleging disparate treatment, we follow the three-step process outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must establish a prima-facie case of discrimination. Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008). To establish a prima-facie case of disparate treatment under the ADEA, a plaintiff must show (1) that he was at least forty years old at the time of the adverse employment action; (2) that his job performance met the employer's legitimate expectations; (3) that he was actually or constructively discharged; and (4) that his employer continued to need the services he had been performing. Id.

Next, the defendant has the burden of presenting a legitimate, nondiscriminatory reason for the employment decision. Id. It "need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive." Id. (citing Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007).

Civil No. 08-1008 (JAF)                                                         -9-

The burden then shifts to the plaintiff to demonstrate that the defendant's asserted reason is a pretext for age discrimination. Id. This burden may be satisfied through either direct or circumstantial evidence, including statistics, derogatory comments, differential treatment in the workplace, and the use of younger replacement. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) (citing cases). For example, in Hebert v. Mohawk Rubber Co., the court found that the plaintiff had sufficiently demonstrated pretext where the statistical evidence showed that the plaintiff's "termination was but one in a series of personnel changes . . . designed to accomplish a facially neutral reorganization by systematically eliminating older workers from the workforce." 872 F.2d at 1114. In that case, the evidence showed that the defendant fired thirteen of the seventeen employees in the protected class. Id.

Here, Defendant concedes for summary judgment purposes that Plaintiffs have stated a prima-facie case of age discrimination, but argues that Plaintiffs have failed to rebut its legitimate, nondiscriminatory explanation for José's discharge. Docket No. 36. Defendant asserts that it fired José as a result of the elimination of his position during a corporate reorganization. Id. Because this reason, on its face, would justify a conclusion that José was fired for a nondiscriminatory reason, the burden shifts to Plaintiffs to prove that this reason was pretextual. See Torrech-Hernández, 519 F.3d at 48.

Plaintiffs argue that Defendant's explanation is pretextual because (1) Defendant gave inconsistent explanations for José's termination; and (2) statistical evidence demonstrates that age was a factor in the termination. Docket No. 45.

Plaintiffs assert that Defendant gave inconsistent explanations for the rationale for and timing of the terminations. They note that at one point, Defendant states that Nathan decided to eliminate José's position in September 2006 and informed St. Pe' Bruno of the decision in late October or early November of 2006, while at another point, Defendant states that Nathan made the ultimate decision in mid-November 2006. Docket Nos. 35-1, 46-8. Nathan testified that he did not consult St. Pe' Bruno regarding which positions would be eliminated; however, St. Pe' Bruno testified that she was consulted and, in fact, that she was asked to determine which positions were redundant, at some point in November 2006. Docket Nos. 35-7; 46-4. These inconsistent statements regarding the nature of the decisionmaking process cast some doubt on Defendant's explanation that José's termination was a result of a coordinated restructuring process.

Plaintiffs also note that Defendant gave conflicting evaluations of José's job performance. Although José's job evaluations consistently stated that he met or exceeded expectations, see Docket Nos. 34-8 to 34-14, Defendant stated in an interrogatory that "there were some serious concerns about [José's] performance that were known

prior to his termination," and that after the termination, Defendant identified further deficiencies in José's performance, Docket No. 46-8. This later explanation appears self-serving in light of José's job evaluations, and renders Defendant's explanations of the termination less credible. Taken together with the inconsistent statements about the decisionmaking process, the implausible criticisms of José's performance raise an issue of fact as to whether Defendant's stated reason for the termination is pretextual.

Next, we turn to Plaintiffs' statistical evidence that purports to show that age was a factor in the termination decision. Seven of the eight (87.5%) of the regional sales employees who were fired were over forty. Prior to the reorganization, eighty-nine out of 124 (72%) of the regional sales employees were over forty. Put another way, the reorganization led to 8% of older regional sales employees losing their jobs, while only 3% of younger employees lost their jobs. This evidence is admittedly quite weak; however, Defendant has not offered an explanation for why older employees would be overrepresented in the pool of fired employees. Nor has Defendant explained how it chose the other seven employees who were discharged during the reorganization.

Finally, we note that José's duties were taken over by St. Pe' Bruno, who was forty-nine, Marilyn Newell, who was fifty-three, and Richard Stinnett, who was forty-three. All three employees were over the age of forty, but all were substantially younger than José, who

was sixty-six at the time. The use of younger replacements, combined with the statistical evidence and Defendant's lack of explanation, compels us to conclude that Plaintiffs have created an issue of fact as to whether, but for age bias, José would have kept his job or been shifted to another position during the restructuring process. See Hebert, 872 F.2d at 114-16.

### 2. Disparate Impact

The ADEA also authorizes recovery under a disparate impact theory. Smith v. City of Jackson, 544 U.S. 228, 240 (2005). A plaintiff may state a disparate impact claim by alleging an employment practice that is facially neutral, but that falls more harshly on one group than another. Id. at 239. To establish a prima-facie case of disparate impact discrimination, a plaintiff must identify a specific process that causes the disparate impact and offer statistical evidence sufficient to show that the practice caused adverse actions against individuals because of their membership in a protected group. Id. at 241; Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 994 (1988). "[It is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" City of Jackson, 544 U.S. at 241 (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989)).

Here, Plaintiffs have not challenged a specific test, requirement or practice. They allege that as a part of the restructuring process, older workers were overrepresented among those employees that were fired. However, they have not identified a facially neutral rule that is responsible for the disparity; accordingly, they have not established a prima-facie disparate impact claim under the ADEA. See City of Jackson, 490 U.S. 642 at 656.

### 3. Law No. 100

Because we retain José's disparate treatment claim, we retain his Law 100 claim. See Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007) (stating that "[o]n the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous") (citing González v. El Día, 304 F.3d 63, 73 (1st Cir. 2002)).

Consequently, we grant Defendant's motion for summary judgment with respect to the disparate impact claim, but not with respect to the disparate treatment claim or the Law 100 claim.

## B. Breach of Contract and Law No. 80

Plaintiffs argue that we must grant summary judgment in their favor with respect to its Commonwealth contract claims because there is no genuine issue of material fact as to the content of the contract. Docket No. 33. Defendant counters that Law 80 provides the exclusive remedy for wrongful termination claims, so Plaintiffs cannot recover on a breach of contract claim. Docket No. 36.

Civil No. 08-1008 (JAF)                                                    -14-

Defendant further argues that we must dismiss the Law 80 claim because, under Law 80, a bona-fide reorganization constitutes just cause for discharge. Id.

The Puerto Rico Civil Code provides that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." 31 L.P.R.A. § 2994. Law 80 provides a remedy to employees contracted without a fixed term who are discharged without just cause. 29 L.P.R.A. § 185a. Under Law 80, reorganizations are considered just cause to terminate an employee. 29 L.P.R.A. § 185b(e). The Puerto Rico legislature intended Law 80 to provide a baseline level of economic protection from wrongful dismissals. Otero-Burgos v. Inter-Am. Univ., __ F.3d __, 2009 WL 416647, at *6 (1st Cir. 2009). Law 80 "provides the exclusive remedy for wrongful termination of at-will employees in Puerto Rico." Soto-Lebrón v. Fed. Express Corp., 538 F.3d 45, 55 (1st Cir. 2008) (citing cases).

However, where there is a binding employment contract, the parties are not limited to the remedies specified in Law 80. Otero-Burgos, 2009 WL 416647, at *10. For example, in Otero-Burgos, the First Circuit held that Law 80 did not trump the provisions in a professor's tenure contract, which provided that his appointment was intended to be for the rest of his working years and that he could only be terminated for adequate cause or institutional financial stress. Id. at *7-*8. The First Circuit reasoned that "[t]he Puerto

Rico legislature did not intend to write a 'remedial' statute that, while purporting to provide relief for at-will employees lacking any other legal recourse, would limit the remedies of a tenured professor where . . . his contract 'guaranteed the continuation' of his full-time employment for the 'rest of his working years.'" Id. at *10. Accordingly, although the professor's contract did not have a fixed end date, it was not a "contract without a fixed term" such that Law 80 would provide the exclusive remedy for wrongful discharge. Id.

Defendant does not contest that José had a valid employment contract. Although Defendant strenuously argues that José's contract was for an indefinite period, we believe this is a red herring: José was clearly not an at-will employee, cf. Soto-Lebron, 538 F.3d at 54-55 (finding Law 80 to be exclusive remedy for at-will employees), nor was he attempting to enforce an implied contract, cf. Weatherly v. Int'l Paper Co., 648 F. Supp. 872, 875 (D.P.R. 1986) (holding that Law 80 is exclusive remedy where plaintiff asserts an implied lifetime contract). Rather, José's contract was akin to the contract at issue in Otero-Burgos: it explicitly provided for long-term employment and provided José with the assurance that he would not be discharged but for good cause. See Docket No. 33-4. To the extent that José's employment contract contained additional protections above the baseline provided by Law 80, Law 80 does not provide an exclusive remedy. See Otero-Burgos, 2009 WL 416647, at *10.

Turning to the substance of the contract, the termination provision states that the contract could be terminated in only two

ways. Docket No. 33-4. First, the parties could terminate the contract through mutual agreement. Id. Second, Defendant could terminate the contract for good cause, which the contract defines as theft or other commission of a crime, gross negligence, unreasonable refusal to perform on contractual duties, or failure to perform duties if such failure harms Defendant. Id. Plaintiffs argue that José was not discharged for good cause, since he consistently received evaluation that his performance met or exceeded expectations. Docket No. 33-1; see Docket Nos. 34-8 to 34-14. Defendant does not dispute this,[1] but relies entirely on the argument that José's remedy is precluded by Law 80. Docket No. 42. As we determine that Law 80 does not provide the exclusive remedy in this instance, we find that José is entitled to damages for breach of contract. Accordingly, we grant Plaintiffs' motion for partial summary judgment and deny Defendant's motion for summary judgment with respect to the contract claim.

Because Plaintiffs do not respond to Defendant's assertion that the reorganization constituted just cause for José's discharge under Law 80, we grant Defendant's motion for summary judgment with respect to the Law 80 claim.

---

[1] Defendant does assert, in an answer to an interrogatory, that it had concerns regarding José's performance that might have led to his termination even absent the reorganization process. Docket No. 46-8. However, Defendant neither explains the nature of these concerns nor argues that it had good cause to fire José under the employment contract. Accordingly, we find that it is undisputed that José was not discharged for good cause.

**C.   Reconsideration**

Plaintiffs ask us to reconsider our ruling that Roxana's Article 1802 spousal claim is time-barred. Docket No. 40.

Pursuant to Federal Rule of Civil Procedure 59(e), we entertain motions for reconsideration to (1) correct manifest errors of law or fact, (2) consider newly discovered evidence, (3) incorporate an intervening change in the law, or (4) otherwise prevent manifest injustice. See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citing 11 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995)); see also Dr. José S. Belaval, Inc. v. Pérez-Perdomo, 465 F.3d 33, 37 n.4 (1st Cir. 2006); Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997); FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992). Plaintiffs have not demonstrated, nor do we find, that these circumstances present themselves here.

Plaintiffs present certified translations of two non-binding Puerto Rico Court of Appeals cases that support their argument that Roxana's claim is not time barred, or indeed, has not yet accrued. See Docket No. 40-2, 40-3. However, Defendant responds with a certified translation of a Puerto Rico Court of Appeals case that comes to the opposite conclusion. See Docket No. 47-2. Because there is a conflict in the caselaw, Plaintiffs cannot demonstrate that we made a manifest error of law. Plaintiffs further note this exact issue is pending before the First Circuit, see Document No. 40-1;

Civil No. 08-1008 (JAF)                                                -18-

however, this pending case does not constitute an intervening change of law requiring us to reconsider our result.

Accordingly, we do not reconsider our conclusion that Roxana's claims were time-barred.

## IV.

### Conclusion

In accordance with the foregoing, we hereby **GRANT** Plaintiffs' motion for partial summary judgment, Docket No. 33, and find Defendant liable for breach of contract. We **GRANT IN PART** Defendant's motion for summary judgment, Docket No. 36, and **DISMISS** Plaintiffs' disparate treatment and Law 80 claims. We **DENY** Plaintiff's motion for reconsideration, Docket No. 40.

The parties are encouraged to settle this case before trial, thereby saving costs and attorney's fees.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 25th day of March, 2009.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U.S. District Judge